IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALVIN FORD, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-23-3190 |
| THE SHERWIN WILLIAMS MANUFACTURING COMPANY, | * | |
| | * | |
| *Defendant*. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Alvin Ford ("Plaintiff" or "Ford") brings this action against Defendant The Sherwin-Williams Manufacturing Company ("Defendant" or "Sherwin-Williams"), alleging discrimination based on a failure to hire claim in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq*. (ECF No. 1.)[1] Sherwin-Williams has moved to dismiss or stay this action and compelling arbitration of Plaintiff's claims. (*See* Defendant's Motion to Compel Arbitration (the "Defendant's Motion"), ECF No. 9). Plaintiff responded in opposition, arguing that "there exists no valid arbitration agreement governing this matter[] and, even if there was a previously valid arbitration agreement, the terms of the agreement do not govern the facts pleaded in the [instant] case." (ECF No. 10 at 2.) In reply, Sherwin-Williams asserts that Plaintiff's claims "squarely fall within the substantive scope of the arbitration provision at issue, and [Ford]

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated.

1

cannot overcome the strong federal policy in favor of arbitration." (ECF No. 11 at 1.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated herein, Defendant's Motion to Compel Arbitration (ECF No. 9) is GRANTED.

## BACKGROUND

Plaintiff Alvin Ford was hired by Duron as a paint mixer in 1999. (ECF No. 10 at 2 (citing ECF No. 10-1 ¶ 2).) Duron was acquired by Defendant Sherwin-Williams in 2004. (*Id.* (citing ECF No. 10-1 ¶ 3).) On February 2, 2016, while still employed by Sherwin-Williams, Ford received an electronic offer of employment (the "offer letter") by which Sherwin-Williams offered Ford a promotion to Lead Mixer-Paint. (ECF No. 9-4.) The offer letter was sent to Plaintiff's preferred email address in his employee profile (ECF No. 11-1 ¶5) and provided that:

> This offer is made contingent upon the satisfactory completion of the following:
> - . . .
> - Acceptance of the terms and condition of our . . . Employment Dispute Mediation and Arbitration Policy (EDMAP). A copy of the . . . EDMAP [has] been provided for you to view with your offer. You may request from Human Resources Shared Services, a complete copy of the . . . EDMAP, including the "Appeal to Mediation" form, the Mediation Rules, the "Appeal to Arbitration" form, and the Rules for Arbitration.

(ECF No. 9-4 at 2.) The Employment Dispute Mediation and Arbitration Policy (the "EDMAP") was included as an attachment to the offer letter. (*Id.* at 3.) The offer letter further provides that: "I accept the terms and condition of employment above, as well as the terms and conditions of the . . . Corporate [EDMAP] that [has] been provided to me. (*Id.*) The offer letter shows that it was "electronically accepted" by Alvin Ford on February 4, 2016,

2

(*id.*), though Ford denies having received, reviewed, or signed the offer letter.  (ECF No. 10-1 ¶ 8.)

Under the EDMAP, employees agree to resolve through arbitration, *inter alia*, "[d]isputes regarding discrimination or retaliation relating to an employee's termination *or any other aspect of employment*, on a basis prohibited by law, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964 and all other federal Civil Rights Act[,]" as well as "[d]isputes concerning the scope, interpretation, enforceability or application of this policy." (ECF No. 9-3 at 3.)  Ford claims he "never received, reviewed, or signed an agreement to arbitrate." (ECF No. 10-1 ¶ 6.)

In his Complaint, Plaintiff alleges that he "left his employment on good terms following the closure of the manufacturing plant in 2019." (ECF No. 1 ¶ 11.)  In or around November 2022, Ford learned of an opening for the position of Paint Maker with Sherwin-Williams, to which he applied.  (*Id.* ¶¶ 13–14.)  After he submitted his application, Plaintiff alleges that he "learned that Defendant [was] conducting interviews without contacting him . . . and [Ford] proactively contacted [Sherwin Williams] about receiving an interview." (*Id.* ¶ 15.)  Plaintiff alleges that he was interviewed for the position in December 2022 by two white individuals.  (*Id.* ¶ 17.)  According to Plaintiff, he was informed that he was not selected for the position in January 2023 and subsequently learned that "Defendant had selected a less-experienced Caucasian male for the position." (*Id.* ¶¶ 18–19.)

On November 21, 2023, Ford initiated the instant litigation against Sherwin-Williams, alleging discrimination based on a failure to hire claim in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq*.  (ECF No. 1.)

3

On February 1, 2024, Defendant Sherwin-Williams filed the pending Motion to Compel Arbitration (ECF No. 9) arguing that Ford entered into a binding arbitration agreement governing all employment related disputes when he accepted the offer letter in 2016 and, as such, Plaintiff's claims are subject to resolution by arbitration. (ECF No. 9-1 at 3–6.) Ford responded in opposition, arguing that "there exists no valid arbitration agreement governing this matter[] and, even if there was a previously valid arbitration agreement, the terms of the agreement do not govern the facts pleaded in the [instant] case." (ECF No. 10 at 2.)

**STANDARD OF REVIEW**

### I.  Motion to Compel Arbitration

Defendant filed the pending Motion to Compel Arbitration (ECF No. 9) pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Although motions to compel arbitration "exist in the netherworld between a motion to dismiss and a motion for summary judgment," the decision to treat a motion to compel as one or the other "turns on whether the court must consider documents outside the pleadings." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). Because the EDMAP is not integral to the Complaint, and thus the Court must consider the agreement itself as extrinsic evidence, the Court construes the Defendant's Motion to Compel Arbitration (ECF No. 9) as a motion for summary judgment. *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) ("Treating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute . . . or where documents outside the pleadings must be considered."). As this Court has previously noted, under Federal Rule of Civil Procedure 56(a), "motions to compel arbitration shall be granted if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Thomas v. Progressive Leasing*, No. RDB-17-1249, 2017 U.S. Dist. LEXIS 176515, at *2 (D. Md. Oct. 25, 2017) (citing FED. R. CIV. P. 56(a); *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251–52 (D. Md. 2011)).

Although the Fourth Circuit has characterized the standard of review on a Motion to Compel Arbitration as "*akin to* the burden on summary judgment," the pending motion will not be converted to or treated as a motion for summary judgment. On the contrary, the remedies available to a defendant moving to compel arbitration are limited to a stay or dismissal of the action. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("[T]he FAA requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements [citing 9 U.S.C. § 3] . . . Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992))).

The standard of review on a Motion to Compel Arbitration pursuant to the FAA is "'akin to the burden on summary judgment.'" *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016) (quoting *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)). Therefore, motions to compel arbitration "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Rose*, 816 F. Supp. 2d at 251–52.

## II.      The Federal Arbitration Act

"Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986)). The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, requires that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at § 2; *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("This text reflects the overarching principle that arbitration is a matter of contract." (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010))). Arbitration agreements "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 364 (2011) (internal citation omitted). The FAA also requires that a federal court stay any proceedings that present a controversy which the parties have agreed to arbitrate. 9 U.S.C. § 3. Moreover, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Despite this presumption, agreements to arbitrate are fundamentally about private choice. "[A]rbitration is a matter of contract and a party cannot be required to submit to

6

arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Federal courts have the authority to compel arbitration, but in making that determination this Court is mindful that its role is limited to determining the "question of arbitrability," or the "gateway dispute about whether the parties are bound by a given arbitration clause." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

The United States Court of Appeals for the Fourth Circuit has held that a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). "Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l*, 252 F.3d at 710. State contract formation law determines the validity of arbitration agreements. *Concepcion*, 563 U.S. at 338–39; *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005). In Maryland, "the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988). As this case involves the issue of the validity of the arbitration agreement and because the contract was entered into by the parties in Maryland, Maryland law governs.

### III. Applicable Maryland Law

Under Maryland law, an agreement to arbitrate disputes is enforceable if it is a valid contract. *Hill*, 412 F.3d at 543. To determine the validity of the arbitration agreement, Maryland courts look at the four corners of an arbitration provision. *Id.* As with any contract, the arbitration provision must be supported by adequate consideration to be valid and enforceable. *See Cheek v. United Healthcare*, 835 A.2d 656, 661 (Md. 2003).

## ANALYSIS

Sherwin-Williams moves this Court to compel Ford to arbitrate his claims pursuant to the terms of the parties' agreement to arbitrate, pursuant to the EDMAP and the FAA, and to dismiss or stay this action pending arbitration. (ECF No. 9.) Sherwin-Williams asserts that Ford is precluded from litigating his claims before this Court because he is a party to a valid and enforceable arbitration agreement agreeing to arbitrate "[d]isputes regarding discrimination or retaliation relating to an employee's termination *or any other aspect of employment*" that he had or may have against Sherwin-Williams. (ECF No. 9-1 at 3–6; ECF No. 11 at 1–4.) In opposition, Ford argues that the arbitration agreement is invalid, (ECF No. 10 at 4–7), and that his claims are outside the scope of the purported agreement to arbitrate, (*id.* at 7–11). At bottom, the Court finds that the parties entered into a valid arbitration agreement; and the EDMAP "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator. Accordingly, Defendant's Motion to Compel Arbitration (ECF No. 9) is GRANTED.

### I. The Parties Entered into a Valid Arbitration Agreement.

The FAA "requires courts to enforce covered arbitration agreements according to their

8

terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citing 9 U.S.C § 2). Under Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also AT&T Techs., Inc.*, 475 U.S. at 648–49. State contract formation law determines the validity of arbitration agreements. *Concepcion*, 563 U.S. at 338–39; *Hill*, 412 F.3d at 543.

Attached to Sherwin-Williams Motion to Compel Arbitration was an offer letter dated February 2, 2016 addressed to Ford's preferred email address from his employee profile (ECF No. 11-1 ¶ 5) that conditioned Ford's employment upon his acceptance of the terms of the EDMAP, among other things. (ECF No. 9-4.) The same document shows that it was "electronically accepted" by Alvin Ford on February 4, 2016. (*Id.*) After this promotion, Ford's employment with Defendant continued for several years. (ECF No. 1 ¶¶ 10–12.) Plaintiff, unable to seriously dispute this point, challenges the arbitration agreement in several ways, arguing (1) that there was no mutual assent, (ECF No. 10 at 5); (2) that the agreement lacks sufficient consideration, (*id.* at 6–7); and (3) that the agreement is invalid due to unconscionability—though this challenge is better understood as a challenge to consideration, (*id.* at 7). The Court briefly addresses each of Ford's arguments in turn.

First, Plaintiff contends that "[t]here was no mutual assent." (*Id.* at 5.) In short, Ford denies "*receiv*[*ing*] any offer letter, [] *reviewing* the letter or policy, and [] electronically *agreeing* to the employment letter and arbitration policy." (*Id.* (emphasis added).) This Court is unpersuaded by Plaintiff's cursory argument that Sherwin-Williams "ha[s] failed to provide sufficient evidence." (*Id.*) Simply stated, Defendant has established that Ford received and accepted the offer letter. As noted *supra*, the letter offering Ford the position of Lead

9

Mixer-Paint was sent to Ford's preferred email address in his employee profile and was "electronically accepted" on February 4, 2016.  (ECF No. 9-4.)  Subsequent to this acceptance, Ford's employment at Sherwin-Williams continued for several years.  (ECF No. 1 ¶¶ 10–12.)  Whether Ford reviewed the EDMAP prior to electronically accepting the offer letter is of no moment.  As the Supreme Court of Maryland[2] explained in *Walther v. Sovereign Bank*, 872 A.2d 735 (Md. 2005):

> If petitioners did not [read the agreement] before they signed the agreement, they have no persons to blame but themselves. . . . [W]e are loath to rescind a conspicuous arbitration agreement that was signed by a party whom now, for whatever reason, does not desire to fulfill that agreement.

*Id.* at 754.

Next, Ford contends that the agreement lacked consideration.  (ECF No. 10 at 6–7.)  In brief, Ford argues that, because he was already employed by Defendant in 2016, "any [a]greement . . . would consist solely of Plaintiff's promise to arbitrate in exchange for continued employment, making it invalid for lack of sufficient consideration." (*Id.* at 7.)  While an arbitration agreement must be supported by adequate consideration to be valid and enforceable, *Cheek*, 835 A.2d at 661, it is well-established under Maryland law that "the fact that two parties agreed to forfeit their right to seek legal relief in the courts and, instead, bind themselves to arbitrate their disputes, constitutes consideration for the arbitration agreement." *See Schaffer v. ACS Gov't Svcs., Inc.*, 321 F. Supp. 2d 682, 686 (D. Md. 2004) (citing *Johnson*, 148 F.3d at 378–79).  By its terms, the EDMAP provides that both Sherwin-Williams and its

---

[2] At the time of *Walther*, the Supreme Court of Maryland was named the "Court of Appeals of Maryland."  At the November 8, 2022 general election, voters in Maryland ratified a constitutional amendment changing the name of the "Court of Appeals of Maryland" to the "Supreme Court of Maryland." The name change took effect on December 14, 2022.

10

employees agree to arbitrate disputes. (ECF No. 9-4.) This "'mutual promise to arbitrate constitutes sufficient consideration.'" *Johnson*, 148 F.3d at 378 (quoting *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997)).

Lastly, Ford challenges the agreement as "invalid due to unconscionability," (ECF No. 10 at 7), though his position is better understood as a challenge to consideration. Ford points to the "Right to Amend" provision of the EDMAP, which provides that:

> [Sherwin-Williams] reserves the right to amend or terminate this policy at any time, provided however, that unless the parties otherwise agree to the contrary, disputes arising prior to the effective date of such amendment or termination shall be subject to the policy as in effect at the time the dispute arose.

(*Id.* (citing ECF No. 9-3 at 8).) Ford claims that "the promise within the arbitration policy was illusory, and therefore, no real promise at all," pointing to the Maryland Supreme Court's decision in *Cheek*, 835 A.2d at 669, and this Court's decision in *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 593–94 (D. Md. 2013). (ECF No. 10 at 7.) However, the EDMAP, on its face, unambiguously requires both parties to arbitrate. As such, this case is distinguishable from *Cheek* and *Caire*, where the arbitration agreements were void because one party made no promise to arbitrate at all. *See Peoplesoft*, 412 F.3d at 544 (distinguishing from *Cheek* and holding that where an arbitration clause unambiguously bound both parties, the employer's discretion to change certain separate internal dispute resolution procedures was outside the arbitration clause, and it was error to conclude that there was no mutual promise to arbitrate).

## II. The EDMAP "Clearly and Unmistakably" Delegates the Threshold Issue of Arbitrability to the Arbitrator.

In the Fourth Circuit, litigants seeking to compel arbitration must demonstrate, "(1)

the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F. 3d 496, 500-501 (4th Cir. 2002) (citing *Whiteside v. Teltech Corp.*, 940 F. 2d 99, 102 (4th Cir. 1991).

Here, the issue is whether the EDMAP between Ford and Sherwin-Williams covers the dispute at hand. Under the EDMAP, employees agree to resolve through arbitration, "[d]isputes regarding discrimination or retaliation relating to an employee's termination *or any other aspect of employment*, on a basis prohibited by law, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964 and all other federal Civil Rights Act[.]" (ECF No. 9-3 at 3.) While Ford asserts his claims against Sherwin-Williams do not "'involve significant aspects of the employment relationship'" and the EDMAP "does not clearly apply to the causes of action as stated in the Complaint," (ECF No. 10 at 8–9, 9–10), this Court can resolve Sherwin-William's Motion to Compel Arbitration without deciding either issue raised by Ford. Importantly, the EDMAP provides that both parties agree to resolve through arbitration "[d]isputes concerning the scope, interpretation, enforceability or application of this policy." (ECF No. 9-3 at 3.) While neither party addressed this provision in its submissions, (*See* ECF Nos. 9-1, 10, 11), this provision "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator. *AT&T Techs., Inc.*, 475 U.S. at 649 (explaining that an arbitration agreement can assign the threshold question of arbitrability to an arbitrator if it does so "clearly and unmistakably"). As such, this Court must enforce the delegation clause and send the

12

question to arbitration.

### III. This Matter Will Be STAYED While the Parties Litigate Their Claims and Defenses Against Each Other Before an Arbitrator.

Because the Court concludes that the arbitration agreement is valid and enforceable, the Court also must stay the matter. *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (holding that, when an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration)); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("[T]he FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' This stay-of-litigation provision is mandatory." (quoting 9 U.S.C. § 3)).

Accordingly, Defendant's Motion to Compel Arbitration (ECF No. 9) is GRANTED and the proceedings will be STAYED.

### CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 15) is GRANTED.

A separate Order follows.

Date: April 30, 2024                                         /s/
                                                    Richard D. Bennett
                                                    United States Senior District Judge